**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JTS CAPITAL 4 LLC,**<br>        **Plaintiff,**<br><br><br>                **v.**<br><br>**NORTHWEST BANK f/k/a NORTHWEST**<br>**SAVINGS BANK,**<br>        **Defendant.** | **No. 1:25-cv-00132-CB** |

**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant Northwest Bank f/k/a Northwest Savings Bank ("Northwest"), by counsel, submits this Memorandum in Support of Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and states as follows:

<u>**Background**</u>

Northwest respectfully requests that this Honorable Court dismiss the Complaint with prejudice. Plaintiff, JTS Capital 4 LLC ("JTS"), purchased several different loans under a Loan Sale Agreement with Northwest, dated December 18, 2024, which were brokered through The Debt Exchange, Inc. *A true and correct copy of the Loan Sale Agreement is attached hereto and made a part hereof as Exhibit A.*

Among the loans were two (2) identified in Plaintiff's Complaint as "Note 1" and "Note 2". Note 1 is a commercial Promissory Note dated, August 8, 2007, in the principal amount of $3,760,000.00, wherein Pine Grove Ambulatory Surgical Center, LLC ("Pine Grove") agreed to re-pay said principal sum together with interest at the initial rate of 7.750% per annum over a 20-year term. *See* Complaint ¶ 7. A true and accurate copy of Note 1 was attached to the Complaint as Exhibit A. Note 2 is a second commercial Promissory Note delivered by Pine Grove to

Northwest, dated February 2, 2009, in the principal amount of $250,000.00, wherein Pine Grove agreed to re-pay said principal sum on demand together with interest at the initial rate of 5.50% per annum until the loan's maturity. ***See id.*** ¶ 9.  A true and accurate copy of Note 2 was attached to the Complaint as Exhibit B.  Note 1 and Note 2 are hereinafter collectively referred to as the "Pine Grove Loans."

In a letter dated May 1, 2025, JTS demanded that Northwest repurchase the Pine Grove Loans for the sum of $1,071,520.65 plus legal fees incurred through the consummation of settlement.  *A true and correct copy of the letter is attached hereto and made a part hereof as Exhibit B.*  In the Complaint, JTS is now demanding that Northwest repurchase the Pine Grove Loans for $1,128,076.04.  Complaint ¶¶ 42, 52.  JTS's claims cannot be supported by the terms of the very Loan Sale Agreement that JTS relies upon as the crux of its complaint.

## **<u>Argument</u>**

A.  <u>Based on the Terms of the Loan Sale Agreement, JTS Cannot Support its Allegations against Northwest.</u>

Here, the gist of JTS's claim is that notwithstanding the fact JTS knew it was purchasing substandard loans[1], Northwest purportedly failed to disclose in the Loan Review File that on December 9, 2024, it obtained confessions of judgment for both Pine Grove Loans which purportedly caused Pine Grove to cease operations.[2]  ***Id.*** ¶ 17.  The Complaint alleges that

---

[1] ***See*** Complaint at ¶¶ 11-14 (beginning in 2018, Pine Grove experienced several operational setbacks, including its merger with Allegheny Health Network, inability to recruit new surgeons, and changeover in management, leading Northwest and Pine Grove to enter into a series of change of term agreements for loan payments, including a **fourth** forbearance agreement; in 2024, Northwest sent written notices of default to Pine Grove demanding payment in full for the principal amount outstanding on the Pine Grove Loans together with counsel fees and costs or interest and fees accruing thereafter).

[2] Northwest notes that, Pine Grove sent a letter dated December 3, 2024, stating that it was ceasing operations – *i.e.*, **before** Northwest confessed judgment.  *A true and correct copy of the letter was attached as Exhibit C to the Complaint and is again attached as Exhibit C hereto.*  Accordingly, JTS's allegation that the confessed judgment caused Pine Grove to close is specious. Moreover, closing on the loan purchase did not occur until December 30, 2024. *See Exhibit G to the Complaint.*

Northwest's failure to disclose the confessed judgments constitutes a material breach of the Agreement. *Id.* ¶ 36.

JTS bases its claim upon Section 6.2.9 of the Loan Sale Agreement which provides: "To the best of the Seller's knowledge, there is no litigation, proceeding, or governmental investigation pending or any order, injunction, or decree outstanding, existing, or relating to the Loan(s) or Mortgaged Property." Ex. A § 6.2.9; *see also* Complaint ¶ 27.

Plaintiff, however, conveniently cherry-picks the language of Section 6.2.9, ignoring several other provisions of the Loan Sale Agreement. For example, Section 6.2 entitled "Representations and Warranties by Seller as to the Loan(s)" provides as follows: "except as otherwise disclosed in the Review File or in **publicly available records**, the Seller hereby represents and warrants that as to the Loan(s), the following representations and warranties are true and correct in all material respects as of the date hereof."[3] Ex. A § 6.2 (emphasis added). One of those representations and warranties upon which JTS relies is Section 6.2.9. Section 6.2, by its very terms excludes any of the representations and warranties set forth in its subparts, including Section 6.2.9, where publicly available records exist. Had JTS – which, by its own account on its website, has a specific "expertise" in distressed asset investing -- simply done a search of the

---

[3] The confessed judgments are publicly available records, as reflected in the civil case dockets for both confessed judgments from Warren County and the judgments Plaintiff attached to its Complaint as Exhibits D and E. *True and correct copies of dockets of both confessed judgments are collectively attached hereto and made a part hereof as Exhibit D.* Plaintiff's attachment of the judgments to its complaint is an acknowledgement that the judgments are publicly available records. Nevertheless, although the Court normally would not be permitted to consider any documents outside the exhibits to the complaint when deciding a motion to dismiss, the Third Circuit has specified that courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). ***Oshiver v. Levin, Fishbein, Sedran & Berman***, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d*, § 1357; ***Chester County Intermediate Unit v. Pennsylvania Blue Shield***, 896 F.2d 808, 812 (3d Cir. 1990)). Here, there can be no dispute that the dockets reflecting the entered judgments are publicly available records.

publicly available records, such a search would have disclosed the confessed judgments entered against Pine Grove. *Id.*

Further, "litigation" is a specifically defined term in Section 8.3 of the Loan Sale Agreement. *Id.* § 8.3. That section provides, among other things, that if the loan(s) are or become subject to any claim, action, lawsuit, foreclosure action, bankruptcy, or other proceeding, administrative or judicial or similar action filed by or against any obligor (collectively "Litigation"), JTS is required to, within so many days after closing, provide the name of its counsel to Northwest so that counsel can enter its appearance on behalf of JTS. However, a confession of judgment is not a lawsuit, action, or proceeding, but simply a judgment that was entered against Pine Grove.

Other sections of the Loan Sale Agreement support the fact that JTS, as a sophisticated purchaser of distressed loans, certainly knew it was purchasing less than stellar loans at a discount where it was required to conduct its own due diligence. For example, Section 4.1 provides that JTS was purchasing the loans "as-is." *Id.* § 4.1. In agreeing to Section 5.5 of the Loan Sale Agreement, JTS admitted that:

> [JTS's] bid and decision to purchase the Loan(s) is based upon its own comprehensive review and independent expert evaluation and analysis of the Review File and other materials deemed relevant by the Buyer and its agents. . . . The Buyer has made such independent investigation as the Buyer deems to be warranted into the nature, title, attachment, perfection, priority, validity, enforceability, collectability, and value of the Loan(s), the title, condition and value of any collateral securing the Loan(s), the market conditions and other characteristics of the places where any such collateral is located, and all other facts it deems material to the purchase of the Loan(s).

*Id.* § 5.5.

Additionally, Section 6 provides:

> [Northwest] has not, does not and will not make any representations or warranties with respect to the collectability of any Loan or any amounts due under any Loan,

4

or the value or condition of the Mortgaged Property or other collateral securing repayment of any Loan(s). To the extent the Loan(s) constitute personal or real property, such property is sold "as is, where is," and [Northwest] expressly disclaims any representations or warranties, express, implied, statutory or otherwise, with respect to such property.

*Id.* § 6.

Accordingly, based on the terms of the Loan Sale Agreement, JTS cannot support its allegation that Northwest had any responsibility to disclose the confessed judgments to JTS. ***See id.*** §§ 6.2.9, 8.3. Also, according to the terms of the Loan Sale Agreement, JTS instead had the responsibility to search for publicly available records as JTS acknowledged that it had done a comprehensive review of all the loans, including the Pine Grove Loans, with an independent expert evaluation, all of which would have discovered the confessed judgments. ***See id.*** §§ 5.5, 6.2. Further, JTS admitted that it had purchased all the loans, including the Pine Grove Loans, in "as-is" condition, whereas Northwest made no representations or warranties that JTS could ever collect on any of the loans it purchased, including the Pine Gove Loans. ***See id.*** §§ 4.1, 6. Consequently, all of JTS's claims are undermined by the very agreement it relies upon. As such, JTS has failed to state a claim upon which relief may be granted.

B.    JTS Failed to Establish that Northwest Must Repurchase the Pine Grove Loans and Failed to Allege or Establish Any Actual Damages

Assuming JTS were able to establish that Northwest was required to disclose the confessed judgments and failed to do so, JTS would still have to establish causation for any damages suffered. Tellingly, JTS fails to allege that, had it known about the confessed judgments, it would not have purchased the Pine Grove Loans or it even suffered a loss. Instead, JTS merely seeks to have Northwest repurchase the Pine Grove Loans. JTS alleges in its complaint that it relied upon documents in what it terms the loan review file and an assignment of rents contained within the

loan file during its "due diligence" in performing its own valuation of the assets backing the Pine Grove loans. Complaint at ¶ 36.

However, JTS failed to disclose to the Court that the Pine Grove Loans were also secured by a mortgage on property owned by Pine Grove. *Attached hereto as Exhibit E is the publicly recorded and available mortgage securing the Pine Grove loans.* As the mortgage is a publicly available record, this Court may consider it. Additionally, a defendant may attach pertinent documents to a motion to dismiss if the plaintiff did not attach them to the complaint, and the documents will be considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claim. ***Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.***, 998 F.2d 1192, 1195-96 (3d Cir. 1993). Accordingly, as the Complaint referred to the mortgage, Complaint ¶¶ 8, 27, related to the Pine Grove Loans, which are central to JTS's claim, Northwest is permitted to attach the mortgage to this motion to dismiss. ***See Pension Ben. Guar. Corp.***, 998 F.2d at 1195-96. As the Pine Grove Loans are secured by mortgaged property, JTS can certainly foreclose or execute under the existing confessed judgments against the property and recoup any monies conceivably owed.

Additionally, assuming, for argument's sake, that JTS could allege and establish causation of damages, JTS still cannot demand that Northwest repurchase the Pine Grove Loans. According to the Loan Sale Agreement:

> If such breach or failure is not duly cured within such ninety (90) day period, or not waived or consented to in writing by the Buyer, the Seller shall elect, **in its sole discretion** to **either** (i) repurchase the Loan(s) at the Repurchase Price, **or** (ii) to pay to Buyer the Buyer's actual damages directly caused by such breach, up to an amount not exceeding the Repurchase Price.

*Id.* § 21 (emphasis added).[4]  Consequently, even if JTS established all other elements of its claims, Northwest "in its sole discretion" dictates what the appropriate remedy would be.  *Id.*  In other words, under the Loan Sale Agreement, Northwest would be able to elect to pay JTS its actual damages not to exceed the Repurchase Price instead of repurchasing the Pine Grove Loans. Accordingly, JTS **cannot** demand that Northwest repurchase the Pine Grove Loans.  *Compare id. with* Complaint ¶¶ 42-43, 50.

       C.     <u>JTS's Specific Performance Claim Fails as a Matter of Law</u>

Count I of the Complaint is a cause of action for specific performance.  "Specific performance is only appropriate where the uniqueness of goods precludes a remedy in damages." *Glenn Distributors Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 303 (3d Cir. 2002); *see also Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 256 (E.D. Pa. 2022) (for purposes of specific performance, damages cannot be accurately ascertained "where the subject matter of an agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market"); *Proyectos Electronicos, S.A. v. Alper*, 37 B.R. 931, 933 (E.D. Pa. 1983) ("a buyer is entitled to specific performance if the goods are unique or in other proper circumstances"). Courts in multiple jurisdictions have repeatedly rejected claims for specific performance where the plaintiff fails to establish the uniqueness of the relief requested, including at least one case involving loans.  *See In re MJK Clearing, Inc.*, 286 B.R. 109, 125 (Bankr. D. Minn. 2002) (specific performance was not warranted in effort by creditor to require trustee to return funds that were transferred by creditor to debtor brokerage firm pursuant to securities lending transactions, where master securities loan agreement (MSLA) governed transactions, MSLA provided creditor

---

[4] Furthermore, Section 21 of the Loan Sale Agreement provides that, **if** Northwest breached any representation or warranty, JTS must provide notice of said breach to Northwest within thirty (30) days of discovery of the breach. Loan Sale Agreement § 21.  JTS provides no indication of when it discovered the confessed judgment.

with adequate remedy at law for debtor's breach of agreement, and property involved was not so unique that measure of damages would have been difficult to calculate); *see also, e.g., Klein v. PepsiCo, Inc.*, 845 F.2d 76 (4th Cir. 1988) (aircraft is not "unique" to require specific performance); *i.Lan Systems, Inc. v. Netscout Service Level Corp.*, 183 F. Supp. 2d 328 (D. Mass. 2002) (applying Massachusetts law) (software that was copyrighted and the product of intense labor was held not to be unique or irreplaceable, where the software was mass-produced and interchangeable with a number of competing software packages that ran on ordinary computers and performed substantially the same functions as the software at issue); *Lezell v. Forde*, 26 Misc. 3d 435, 447, 891 N.Y.S.2d 606, 616–17 (Sup. Ct. 2009) (plaintiff sought injunction; complaint alleged that "[t]he Property which is the subject matter of the contract of sale is unique, valuable and irreplaceable" but alleged no other facts, and no other evidence was offered "that would support an inference as to those conclusions and that suitable alternatives are not available in the market to allow cover or a reasonably certain determination of damages based upon the market price/ contract price differential"; court therefore found that the plaintiffs "failed to demonstrate a likelihood of success on the merits of their cause of action for specific performance . . . injury if preliminary injunctive relief is not granted"); *Pierce-Odom, Inc. v. Evenson*, 632 S.W.2d 247 (Ark. App. 1982) (specific performance of a contract for the sale of a mobile home to the plaintiffs was improperly ordered by the trial court, even though the plaintiffs proved part performance of the contract by the defendant so as to take the contract out of the Statute of Frauds, where there were no allegations or proof by the plaintiffs that the particular mobile home in question had a unique or peculiar value or that there were any circumstances requiring specific performance of

the contract).[5]  There is nothing unique about the purchase of substandard loans and these particular loans.

Moreover, "[s]pecific performance should only be granted ... where no adequate remedy at law exists." *Greenwald Caterers*, 599 F. Supp. 3d at 256.  Here, JTS has an adequate remedy if it were to prevail.  JTS can foreclose and execute on the mortgaged property and determine, what loss, if any, incurred between its loan purchase price and the amount received from executing against the mortgaged property.[6]  *See* Ex. E.  For this additional reason, JTS has failed to state a claim for specific performance.

     D.     <u>JTS's Unjust Enrichment Claim Fails as a Matter of Law</u>

In addition, Count II of the Complaint is a cause of action for unjust enrichment pleaded "[i]n the alternative" to Count I's claim for specific performance.  Complaint ¶ 54.  According to said count, JTS is "entitled to recover money damages against [Northwest] as and for its material breaches of the Loan Sale Agreement" and "damages due to [Northwest]'s breach of the Loan Sale Agreement[.]"  *Id.* ¶¶ 54-55.

However, if there is a contract governing the subject matter of the dispute, unjust enrichment based on a theory of quasi-contract is not an available claim.  *Jaraczewski v. Equity Nat'l Title & Closing Servs.*, No. CV 23-274, 2024 WL 3861248, at *4 (W.D. Pa. Aug. 19, 2024) (citing *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 n. 5 (Pa. Super. 2009); *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super.

---

[5] *See also In Duval & Co. v. Malcom,* 214 S.E.2d 356 (Ga. 1975) (where the price of cotton rose dramatically, the buyer sought specific performance of the contract solely on the ground that the price increase made the cotton unique; the court denied specific performance); *Hilmor Sales Co. v. Helen Neushaefer Div. of Supronics Corp.*, 6 U.C.C. Rep. Serv. 325 (N.Y. Sup. 1969) (plaintiff sought to enjoin the defendant from disposing of lipstick and nail polish which were the subject of a sales contract; according to the court, the only unique aspect of the contract was the "closeout" price; the buyer could not purchase similar goods at such a favorable price elsewhere, but he did not claim that replacement was impossible; the court denied specific performance).
[6] In fact, JTS, upon execution on the mortgaged property, may very well receive an amount in excess of its loan purchase price.

1999))).  Hence, JTS cannot base its claim for unjust enrichment on Northwest's alleged material breaches of the Loan Sale Agreement.  JTS has thereby failed to state a claim for unjust enrichment, upon which relief can be granted.

## Conclusion

For the reasons set forth above, Defendant Northwest Bank f/k/a Northwest Savings Bank respectfully moves this Honorable Court to dismiss Plaintiff's Complaint with prejudice and provide such other relief as the Court deems just and proper.

Dated: July 11, 2025, 2025                     Respectfully submitted,

                                              By: */s/ McArdle Booker*
                                                  Nicholas Poduslenko, Esq. (*pro hac vice forthcoming*)
                                                  OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
                                                  1500 Market Street, Suite 3400
                                                  Philadelphia, PA 19102
                                                  nicholas.poduslenko@obermayer.com
                                                  Phone: (215) 665-2356
                                                  Fax: (215) 665-3165

                                                  Brooke Newborn, Esq. (*pro hac vice forthcoming*)
                                                  OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
                                                  Doylestown Commerce Center
                                                  2003 S. Easton Road, Suite 304
                                                  Doylestown, PA 18901
                                                  brooke.newborn@obermayer.com
                                                  Phone: (267) 742-3363
                                                  Fax: (267) 742-3363

                                                  D. McArdle Booker, Esq. (Pa. ID # 320890)
                                                  OBERMAYER REBMANN MAXWELL & HIPPEL, LLP
                                                  525 William Penn Place, Suite 1710
                                                  Pittsburgh, PA 15219
                                                  mcardle.booker@obermayer.com
                                                  Phone: (412) 556-2476
                                                  Fax: (412) 556-2476

*Counsel for Northwest Bank f/k/a Northwest Savings Bank*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of July, 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which I will then send a notification of such filing to all counsel of record.

Dated: _____, 2025          Respectfully submitted,

By: _/s/ McArdle Booker_____
      D. McArdle Booker, Esq.

*Counsel for Northwest Bank f/k/a Northwest Savings Bank*