**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JTS CAPITAL 4 LLC, | ) | Civil Action No. 1:25-cv-00132-CB |
| | ) | |
| Plaintiff, | ) | Honorable Cathy Bissoon |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWEST BANK f/k/a NORTHWEST SAVINGS BANK, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**FIRST AMENDED COMPLAINT IN CIVIL ACTION**

AND NOW comes Plaintiff, JTS Capital 4 LLC, by and through its undersigned counsel, and hereby brings this Civil Action against Defendant, Northwest Bank f/k/a Northwest Savings Bank, and pursuant to Fed. R. Civ. P. 15(a), for its First Amended Complaint, states as follows:

**PARTIES**

1. Plaintiff, JTS Capital 4 LLC ("JTS Capital"), is a limited liability company organized and existing under the laws of the State of Texas with its principal office and place of business located at 3208 Greenleaf Drive, Waco, Texas 76710.

2. Defendant, Northwest Bank f/k/a Northwest Savings Bank ("NW Bank"), is a state savings bank organized and existing under the laws of the Commonwealth of Pennsylvania with its principal office and place of business located at 301 2nd Avenue, Warren, Pennsylvania 16365.

**JURISDICTION & VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. The action seeks specific

performance and/or money damages concerning a loan sale transaction involving an initial purchase price of $1,071,520.65 for two promissory notes.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that Defendant NW Bank is a resident of the Western District of Pennsylvania, and a substantial part of the events and/or omissions giving rise to these claims occurred within this District.

5.      Pursuant to a certain written agreement underlying the transaction at issue in this action, JTS Capital consented to jurisdiction in the Western District of Pennsylvania as NW Bank maintains its principal place of business within this District.

## FACTUAL ALLEGATIONS

6.      In August 2005, Warren General Hospital, along with a group of physicians as minority shareholders, formed Pine Grove Ambulatory Surgical Center, LLC ("PGASC"), a Pennsylvania limited liability company, to build a new medical facility at Route 62, Timberview Lane, Russell, Pennsylvania where physicians could perform outpatient procedures in surgical suites not shared with Warren General Hospital's main campus.

7.       In order to complete the new medical facility, PGASC executed and delivered to NW Bank a certain commercial Promissory Note dated August 8, 2007 in the principal amount of $3,760,000.00 ("Note 1"), wherein PGASC agreed to re-pay said principal sum together with interest at the initial rate of 7.750% per annum on over a 20-year term. A true and accurate copy of Note 1 is attached hereto as **Exhibit A**.

8.      The loan extended to PGASC under Note 1 was secured by a mortgage and assignment of rents encumbering the medical facility premises dated August 8, 2007 and recorded in the Warren County Recorder of Deeds Office on August 14, 2007 at Book 1729, Page 207 for Document No. 2007 - 4207 and Page 220 for Document No. 2007 - 4208.

23630716 _1 130873.0071

9. After receiving the first loan, PGASC executed a business loan agreement and delivered to NW Bank a second commercial Promissory Note dated February 2, 2009 in the principal amount of $250,000.00 ("Note 2"), wherein PGASC agreed to re-pay said principal sum on demand together with interest at the initial rate of 5.50% per annum until the loan's maturity. A true and accurate copy of Note 2 is attached hereto as **Exhibit B**.

10. Note 1 and Note 2 were also secured by substantially all of PGASC's assets pursuant to commercial security agreements, which NW Bank perfected by filing a UCC financing statement with the Pennsylvania Secretary of State on August 13, 2007 at File No. 2007081304893 and continued on July 9, 2012 at File No. 2012070901760 on July 12, 2017 at File No. 2017071200458, and on July 16, 2022 at File No. 2022061600843.

### *The Warren County Loan Judgments against PGASC*

11. Beginning in 2018, PGASC experienced several operational setbacks, including but not limited to its merger with Allegheny Health Network, its inability to recruit new surgeons, and changeover in management, all of which contributed to PGASC's difficulties in fulfilling its financial loan obligations to NW Bank.

12. To maintain the loan relationship, NW Bank and PGASC entered into a series of forbearance agreements that provided a forbearance period through September 30, 2024.

13. On November 12, 2024, NW Bank sent written notices of default to PGASC demanding payment in full for the principal amount outstanding on Note 1 and Note 2 together with attorney's fees and costs or interest and fees accruing thereafter.

14. After receiving the notice of default letters sent by NW Bank, PGASC's management committee held a meeting on November 14, 2024 to discuss the notice of default letters and the surgical center's financial status.

15. On December 3, 2024, an internal memo to PGASC's shareholders and staff members stating that, "[T]hrough unanimous vote, the decision was made to move forward with business dissolution. * * * The PGASC will cease operation at the end of business day *December 19, 2024*." (Emphasis in original). A true and accurate copy of PGASC's internal memo dated December 3, 2024 (the "Internal Memo") is attached hereto as **Exhibit C**.

16. The Internal Memo further provides, "*Northwest Bank will lead the business liquidation process and will name a representative shortly*." (Emphasis added.) *Id.*

17. Based upon the forgoing statements in the Internal Memo, and upon information and belief, NW Bank possessed non-publicly available information of PGASC's forthcoming decision to cease operations through its intimate involvement with liquidating the business.

18. With inside knowledge of PGASC's impending closing through the Internal Memo, NW Bank commenced two separate civil actions in the Common Pleas Court for Warren County, Pennsylvania by filing complaints seeking confessions of judgment against PGASC for default of its obligations under the terms of Note 1 and Note 2.

19. On or about December 9, 2024, the Prothonotary for the Warren County Common Pleas Court entered judgment against PGASC and in favor of NW Bank on Note 1 and Note 2 in in Civil Action Nos. 2024-80535 and 2024-80536.

*The Loan Sale Agreement with JTS Capital*

20. Effective December 30, 2024, JTS Capital purchased a loan portfolio from NW Bank, which included the acquisition of Note 1 and Note 2 i/n/o PGASC, pursuant to the terms of the parties' Loan Sale Agreement dated December 18, 2024 (the "Loan Sale Agreement"). A true and accurate copy of the Loan Sale Agreement is attached hereto as **Exhibit D**.

21. JTS Capital acquired Note 1 and Note 2 from NW Bank for the purchase price of $1,071,520.65. This purchase was completed through DebtX, which provides, among other things, a platform through which loan portfolios are marketed and sold ("DebtX").

22. By virtue of the loan portfolio purchase, JTS Capital acquired by assignment all of NW Bank's rights, titles, and interests regarding Note 1 and Note 2 and the security documents and liens related to the loans.

23. Appendix A to the Loan Sale Agreement defines the term "Review File" as meaning "all instruments and documents, *in the files of the Seller pertaining to the Loan(s)*, including without limitation, the Note(s) and any Collateral Documents and any loan summaries prepared by DebtX or the Seller, but excluding any Excluded Information." (Emphasis added.).

24. Documents related to litigation regarding the loans, such as complaints, judgments or decrees, are not defined as "Excluded Information" in the definitions section contained in Appendix A to the Loan Sale Agreement.

25. As more fully described in Section 6.2, NW Bank, as the "Seller" under the Loan Sale Agreement, made specific representations and warranties to JTS Capital with respect to Note 1 and Note 2.

26. Under Section 6.2.5. of the Loan Sale Agreement, NW Bank represented to JTS Capital that "[e]xcept by written instrument or other written documentation contained in the Review File, neither the Seller nor, to the best of the Seller's knowledge, any prior holder of the Loan(s) has modified * * * " Note 1 or Note 2.

27. Moreover, pursuant Section 6.2.6 of the Loan Sale Agreement, NW Bank expressly represented to JTS Capital that, "[w]ith the exception of any Excluded Information, the Review

5

File includes all material documents in the possession of the Seller, or copies thereof, relating to the Loan(s)."

28. NW Bank further represented to JTS Capital, under Section 6.2.9 of the Loan Sale Agreement, that "[t]o the best of Seller's knowledge, there is no litigation, proceeding or governmental investigation pending, or any order, injunction or decree outstanding, existing or relating to the Loan(s) or Mortgaged Property" *i.e.*, the PGASC assets serving as collateral backing Note 1 and Note 2.

29. In the event of default by either party, Section 21 of the Loan Sale Agreement states, in pertinent part, as follows:

> If after the Closing Date the Seller breaches any representation or warranty set forth in Section 6 which has not expired, the Buyer shall give written notice to the Seller within 30 days of discovery of such breach, and the Seller shall have the right to cure such breach during a period of ninety (90) days after receipt of such notice. If such breach or failure is not duly cured within such ninety (90) day period, or not waived or consented to in writing by the Buyer, the Seller shall elect, in its sole discretion to either (i) repurchase the Loan(s) at the Repurchase Price, or (ii) to pay to Buyer the Buyer's actual damages directly caused by such breach, up to an amount not exceeding the Repurchase Price. The Buyer's remedies set forth in this Section 21 shall be the exclusive remedies of the Buyer, and the Buyer shall not be entitled to any other rights, remedies or other relief, at law or in equity, for the Seller's breach of any representation or warranty set forth in this Agreement.

30. Per Appendix A, the Loan Sale Agreement defines "Repurchase Price" as the purchase price of $1,071,520.65, plus advances and interest.

### *NW Bank's Nondisclosure of Loan Modifications & Refusal to Repurchase*

31. Prior to closing, NW Bank uploaded a memo to the Review File on December 17, 2024 provided as a Trailing Loan Document uploaded which was one day before the bid date on Note 1 and Note 2.

23630716_1 130873.0071

32. The December 17, 2024 memo uploaded to the Review File stated that NW Bank received notice that PGASC plans to shut down on January 1, 2025, and NW Bank has planned to initiate foreclosure proceedings.

33. NW Bank's representations in the December 17, 2024 memo did mention or discuss that it obtained the Loan Judgments against PGASC prior to closing.

34. On January 7, 2025, and following JTS Capital's purchase of the subject loans, JTS Capital first discovered through communications with PGASC representatives that NW Bank had obtained judgments in Warren County Civil Action Nos. 2024-80535 and 2024-80536 (collectively, "Loan Judgments") on Note 1 and Note 2 prior to the loan sale closing and its execution of the Loan Sale Agreement with JTS Capital.

35. Through these discussions, JTS Capital also obtained a copy of the Internal Memo outlining NW Bank's involvement in the business liquidation process for PGASC.

36. Under Section 7.1 of the Loan Sale Agreement, NW Bank was obligated to perform all of its respective covenants prior to closing which included the disclosure of the Loan Judgments and production of all litigation documents in the Review File provided to JTS Capital.

37. NW Bank neither disclosed the fact that it obtained the Loan Judgments against PGASC prior to closing its loan sale to JTS Capital nor did NW Bank produce the notice of default letters sent to PGASC together with other litigation documents related to the judgments in the Review File despite being obligated to do so under Section 6.2 of the Loan Sale Agreement.

38. NW Bank was fully aware of the Loan Judgments prior to closing and knew or should have known that the Loan Judgments constitute written modifications of Note 1 and Note 2 that it was obligated to disclose to JTS Capital in the Review File.

39. NW Bank's reduction of Note 1 and Note 2 to Loan Judgments against PGASC constituted a material modification or change, and copies of the confessions of judgment were not provided in the Review File despite said documents being in NW Bank's possession prior to closing of the Loan Sale Agreement.

40. Further, and as evidenced in the Internal Memo, NW Bank's knowledge of PGASC's wind-down and involvement with PGASC's liquidation process, its possession of the notice of default letters and Loan Judgments demonstrate that NW Bank possessed knowledge of facts material to the Loan Sale Agreement transaction and which show NW Bank's superior knowledge of PGASC's decision to cease operations of its outpatient facility, none of which were disclosed to JTS Capital prior to closing on the Loan Sale Agreement.

41. As the result of NW Bank's failure to disclose the Loan Judgments, JTS Capital justifiably relied upon the assignment of rents NW Bank provided in the Review File during the due diligence period to perform its own valuation of PGASC's assets backing Note 1 and Note 2.

42. In addition, JTS Capital justifiably relied upon the documents that NW Bank *actually disclosed* in the Review File in believing that the two loans to PGASC were active loan obligations owing to NW Bank.

43. The Loan Judgments obtained against PGASC significantly devalued the fair market value of Note 1 and Note 2, which no longer existed after having been reduced to the Loan Judgments, causing JTS Capital to overpay to acquire the loans from NW Bank.

44. The reduction of the two loans to the Loan Judgments fundamentally changed the nature of the obligations owing to NW Bank such that JTS Capital would have excluded said loans (or, more accurately, the *Loan Judgments*) or offered a drastically reduced amount as part of its bid upon the larger portfolio that it acquired from NW Bank under the Loan Sale Agreement.

45. The mortgages on Note 1 and Note 2 in current form are unenforceable on the fee simple interest of the collateral property as additional documentation executed would be required to be executed by PGASC to effectuate a lien on the collateral property.

46.

47. JTS Capital complied in all respects with its obligations under the Loan Sale Agreement, including refraining from negotiating or offering the assets of NW Bank's loan portfolio for sale to any other party during the time of the due diligence period before closing, and fully cooperating with NW Bank by providing it with all requested information and documents to allow NW Bank to facilitate the sale and transfer of its assets.

48. In accordance with Section 21 of the Loan Sale Agreement, JTS Capital sent an email to NW Bank on January 29, 2025, constituting written notice of breach of its representations and warranties in the Loan Sale Agreement with respect to Note 1 and Note 2 and requesting that NW Bank cure the same within ninety (90) days of receipt thereof. A true and accurate copy of the January 29, 2025 email correspondence sent to NW Bank by JTS Capital regarding notice of default is attached hereto as **Exhibit E**.

49. On March 7, 2025, JTS Capital issued written notice to NW Bank through its legal counsel demanding that NW Bank cure its material breach regarding the nondisclosure of Loan Judgments and further reiterating JTS Capital's demand for repurchase of Note 1 and Note 2 and legal fees incurred as the result of NW Bank's breach of Section 6.2 of the Loan Sale Agreement. A true and accurate copy of the correspondence sent to NW Bank's legal counsel on March 7, 2025 is attached hereto as **Exhibit F**.

50. Despite such appropriate demands, NW Bank has failed and refused to cure its material defaults within the ninety (90) day cure period and continues to refuse issuing payment to JTS

Capital for repurchase price for Note 1 and Note 2 which JTS Capital appropriately elected to enforce as its remedy under Section 21 of the Loan Sale Agreement.

51. Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a), an actual and justiciable controversy has arisen and exists between JTS Capital and NW Bank regarding their respective rights, obligations and remedies available under Loan Sale Agreement executed by the parties, and thus JTS Capital is entitled to a judicial determination and declaration that it is entitled to recover damages from NW Bank in accordance with Section 21 of the Loan Sale Agreement.

## COUNT I
### (Request for Declaratory Judgment)

52. JTS Capital repeats and makes part hereof all preceding allegations set forth in paragraphs 1 through 51 of this First Amended Complaint as if fully stated herein.

53. This action for Declaratory Judgment is filed pursuant Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, in which JTS Capital seeks a determination of its rights and responsibilities under the Loan Sale Agreement entered into with NW Bank.

54. There exists an actual, substantial and justiciable issue in controversy between the parties hereto with respect to the NW Bank's covenants under the Loan Sale Agreement and JTS Capital's remedies arising from NW Bank's alleged breach in the performance of these covenants.

55. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because Plaintiff has no adequate remedy at law which will resolve the current controversy.

56. As more fully described in Section 6.2, NW Bank, as the "Seller" under the Loan Sale Agreement, made specific representations and warranties to JTS Capital with respect to Note 1 and Note 2 as a condition precedent prior to closing.

57. Under Section 6.2.5 of the Loan Sale Agreement, NW Bank represented to JTS Capital that "[e]xcept by written instrument or other written documentation contained in the Review File, neither the Seller nor, to the best of the Seller's knowledge, any prior holder of the Loan(s) has modified * * * " as it related to Note 1 or Note 2.

58. Moreover, pursuant Section 6.2.6 of the Loan Sale Agreement, NW Bank expressly represented to JTS Capital that, "[w]ith the exception of any Excluded Information, the Review File includes all material documents in the possession of the Seller, or copies thereof, relating to the Loan(s)."

59. NW Bank further represented to JTS Capital, under Section 6.2.9 of the Loan Sale Agreement, that "[t]o the best of Seller's knowledge, there is no litigation, proceeding or governmental investigation pending, or any order, injunction or decree outstanding, existing or relating to the Loan(s) or Mortgaged Property" i.e., the PGASC assets serving as collateral backing Note 1 and Note 2.

60. In accordance with Section 7.1 of the Loan Sale Agreement, the parties mutually represented that "[t]he Seller and the Buyer shall have performed all of their respective covenants and agreements contained herein which are required to be performed by them on or prior to the Closing Date."

61. The parties dispute whether NW Bank was obligated to disclose the Internal Memo and Loan Judgments, and thus performed the specific covenants owed to JTS Capital in accordance with Section 7.1 of the Loan Sale Agreement.

62. Given the nature of NW Bank's alleged default and material breach of the Loan Sale Agreement, JTS Capital seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201-02 requesting this Court make the following judicial declarations:

   (i)   The Loan Judgments constituted material documents relating to Note 1 and Note 2 which NW Bank was obligated to produce in the Review File under Section 6.2.6 of the Loan Sale Agreement;

  (ii)   The Loan Judgments constituted modifications of Note 1 and Note 2 which NW Bank was required to disclose in the Review File under Section 6.2.5 of the Loan Sale Agreement;

 (iii)   The Loan Judgments constituted knowledge of litigation NW Bank was required to disclose under Section 6.2.9 of the Loan Sale Agreement;

 (iv)   NW Bank's nondisclosure of the Loan Sale Documents and representation that the notes were enforceable constitute a failure in the performance of the covenants and agreements owed to JTS Capital in accordance with Section 7.1 of the Loan Sale Agreement; and

  (v)   Any disputes arising out of JTS Capital's rights and remedies related to NW Bank's alleged material breach of agreement must be decided under Section 20 and Section 21 of the Loan Sale Agreement.

63. Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, an actual and justiciable controversy exists between the parties based on JTS Capital's commencement of this action, and speedy relief is necessary to preserve the rights of the parties under the Loan Sale Agreement entitling JTS Capital to declaratory judgment from this Court under the contractual provisions outlined above, along with an award of appropriate damages as set forth under Section 21 of the Loan Sale Agreement.

23630716 _1 130873.0071

## COUNT II
## (Specific Performance)

64. JTS Capital repeats and makes part hereof all preceding allegations set forth in paragraphs 1 through 63 of this First Amended Complaint as if fully stated herein.

65. Per its obligations under the Loan Sale Agreement, NW Bank represented to JTS Capital prior to closing that the Review File contained all material documents in its possession as it related to Note 1 and Note 2, including written modifications of the loans.

66. NW Bank also represented to JTS Capital that NW Bank had no knowledge of any litigation, proceeding or governmental investigation pending, or any order, injunction or decree outstanding, existing or relating to Note 1 and Note 2.

67. Despite its obligations under Section 6.2 of the Loan Sale Agreement, NW Bank materially breached the Loan Sale Agreement by failing to provide all files in its possession and otherwise disclose the Loan Judgments obtained against PGASC in the weeks just prior to the closing date on December 30, 2024.

68. NW Bank's failure to disclose and its material misrepresentations regarding Note 1 and Note 2 further constitute material breach of Section 6.2 and Section 7.1 of the Loan Sale Agreement wherein NW Bank was obligated to perform all of its respective covenants prior to closing, which included the disclosure of the Loan Judgments and production of all litigation documents in the Review File provided to JTS Capital.

69. JTS Capital complied in all respects with its obligations under the Loan Sale Agreement.

70. By the express terms of the Section 20 and Section 21, the parties acknowledged the unique nature of the loan purchase and mutually agreed to limit JTS Capital's potential remedies and damages in the event NW Bank shall have liability for any material breach of the Loan Sale Agreement.

71.     Despite NW Bank's nonperformance, JTS Capital remains ready, willing and able to complete the transaction and accept payment from NW Bank for the repurchase price of Note 1 and Note 2 as the result of NW Bank's material breaches of the Loan Sale Agreement.

72.     Due to the unique nature of the loan portfolio, as well as the parties' mutual written agreement regarding liquidated damages, JTS Capital has no adequate remedy at law and is entitled to a judgment directing NW Bank to specifically perform its obligations under Section 21 of the Loan Sale Agreement being the issuance of payment to JTS Capital for NW Bank's material breach of the Loan Sale Agreement.

73.     As a direct and proximate result of NW Bank's material breaches of the Loan Sale Agreement, JTS Capital requests a decree of specific performance requiring NW Bank to complete the transaction in accordance with the terms of Section 21, including issuing payment to JTS Capital for the repurchase price of Note 1 and Note 2 in an amount in excess of $1,128,076.04 as the repurchase price of Note 1 and Note 2 of JTS Capital's actual damages, including expenses to protect collateral, costs of this action, and any appropriate incidental damages in an amount to be proven at the trial of this action.

## COUNT III
### (Breach of Loan Sale Agreement)

74.     JTS Capital repeats and makes part hereof all preceding allegations set forth in paragraphs 1 through 73 of this First Amended Complaint as if fully stated herein.

75.     The Loan Sale Agreement is a valid and enforceable contract between JTS Capital and NW Bank.

76.     Section 6.2.2 of the Loan Sale Agreement specifically provides that "(b) expect particular remedies waivers and other provisions may not be enforceable, but such unenforceability does not affect the practical realization of the intended benefits of the Mortgage(s), meaning the ability of

the holder thereof to foreclose the Mortgage(s) for any payment default by the maker or obligor thereunder."

77. The Loan Sale Agreement also specifically provides that the "The Note(s) and Mortgage(s) any document modifying their terms included in the Review File are true and correct copies of the documents they purport to be and ***have not*** been superseded, amended, modified, canceled ot otherwise changed ***expect as disclosed in the Review File***." (Emphasis added.) *See* Section 6.2.5.

78. Despite these plain and unambiguous contractual provisions, NW Bank modified Note 1 and Note 2 upon taking the Loan Judgments and failed to disclose these documents in the Review File in breach of Section 6.2.5 and Section 7.1 of the Loan Sale Agreement.

79. Further, NW Bank represented to JTS Capital that Note 1 and Note 2 were enforceable despite the Loan Judgments reducing the notes to nullities as valid loan documents.

80. NW Bank's violation of its covenants required by Section 6.2 of the Loan Sale Agreement is a material breach of the Loan Sale Agreement.

81. As a direct and proximate result of NW Bank's material breaches of the Loan Sale Agreement, JTS Capital has suffered actual damages and other harm to the extent recoverable under Section 21 of the Loan Sale Agreement.

**COUNT IV**
**(Unjust Enrichment)**

82. JTS Capital repeats and makes part hereof all preceding allegations set forth in paragraphs 1 through 81 of this First Amended Complaint as if fully stated herein.

83. In the alternative, and in the event that the Court finds that JTS Capital is not entitled to a decree of specific performance as requested in the prior Count II, and the contractual rights and remedies under the Loan Sale Agreement are not enforceable, then JTS Capital shall be entitled to

recover money damages against NW Bank as and for its material breaches of the Loan Sale Agreement.

84. JTS Capital seeks compensatory damages for the reasonable value of the overpayment to purchase Note 1 and Note 2 which has unjustly enriched NW Bank at the expense of JTS Capital.

85. By reason of the foregoing, JTS Capital is entitled to a judgment against NW Bank in the amount of $1,128,076.04, or such greater or lesser sum as shall be equal to all JTS Capital's damages due to NW Bank's breach of the Loan Sale Agreement to be proven at the trial of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JTS Capital 4 LLC, respectfully requests judgment in its favor against Defendant, Northwest Bank f/k/a Northwest Savings Bank, as follows:

A. On Count I, declaratory judgment pursuant to 28 U.S.C. §§ 2201-02 requesting this Court make the following judicial declarations:

   (i) The Loan Judgments constituted material documents relating to Note 1 and Note 2 which NW Bank was obligated to produce in the Review File under Section 6.2.6 of the Loan Sale Agreement;

   (ii) The Loan Judgments constituted modifications of Note 1 and Note 2 which NW Bank was required to disclose in the Review File under Section 6.2.5 of the Loan Sale Agreement;

   (iii) The Loan Judgments constituted knowledge of litigation NW Bank was required to disclose under Section 6.2.9 of the Loan Sale Agreement;

   (iv) NW Bank's nondisclosure of the Loan Sale Documents and representation that the notes were enforceable constitute a failure in the performance of the covenants and agreements owed to JTS Capital in accordance with Section 7.1

of the Loan Sale Agreement; and

    (v)    Any disputes arising out of JTS Capital's rights and remedies related to NW Bank's alleged material breach of agreement must be decided under Section 20 and Section 21 of the Loan Sale Agreement.

B.    On Count II, a decree of specific performance of the Loan Sale Agreement as against Defendant NW Bank, together with all appropriate damages described under Section 21 of the Loan Sale Agreement to be proven at the trial of this action;

C.    On Counts III and IV, in the alternative, a money judgment as against Defendant NW Bank in the amount of $1,128,076.04 for the Repurchase Price, or such greater or lesser amount as shall be equal to all Plaintiff's damages under Section 21 due to Defendant's breach of the Loan Sale Agreement to be proven at the trial of this action; and

D.    Any other relief the Court deems equitable and just.

Respectfully submitted,
/s/ *Justin A. Markota*
Justin A. Markota, Esquire
OH I.D. 0092182
ROETZEL & ANDRESS, LPA
6550 Seville Drive
Canfield, Ohio 44406
Telephone: (330) 533-6195
Facsimile: (330) 533-6198
Email: jmarkota@ralaw.com

John J. Rutter, Esquire
OH I.D. 0079186 (*Pro hac vice*)
ROETZEL & ANDRESS, LPA
222 South Main Street
Akron, Ohio 44308
Telephone: (330) 376-2700
Facsimile: (330) 376-4577
Email: jrutter@ralaw.com

*Attorneys for Plaintiff, JTS Capital 4 LLC*

17

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b)(2)(E), the undersigned hereby certifies that a true and correct copy of the foregoing document was filed and served electronically on this 31st day of July 2025 upon attorneys who have completed the ECF registration as required by the Court.

                                                */s/ Justin A. Markota*
                                               Justin A. Markota, Esquire

23630716 _1 130873.0071